Meta S. Chapin v. Commissioner.
Meta S. Chapin v. Commissioner
Docket No. 15489.
United States Tax Court
1949 Tax Ct. Memo LEXIS 176; 8 T.C.M. (CCH) 525; T.C.M. (RIA) 49129; May 24, 1949
Armond M. Jewell, Esq., for the petitioner. Robert H. Kinderman, Esq., for the respondent. DISNEY
Memorandum Opinion DISNEY, Judge: This case involves income taxes for the years 1944 and 1945. Deficiency was determined for 1944 in the amount of $559.41 and for 1945 in the amount of $370.31. The amended petition alleged disallowance of the following items in the following amounts: Contributions $415, interest $22, taxes $343.25, losses $474.95, "medical" $1,076.25, and "miscellaneous expenses" $1,639.72. The principal question presented is whether there was error in such disallowance. The respondent by amendment to answer filed pursuant to leave granted at the hearing alleges that petitioner, under the evidence, received additional income in the amount of $360 *177 in each of the taxable years, that the deficiency should be increased $90 as to each taxable year, and that the penalties be increased accordingly. The case was originally filed under the caption "Ross E. and Meta S. Chapin (Deceased)," the petition being verified by Meta S. Chapin, but upon motion of the respondent the case was, so far as it relates to the Estate of Ross E. Chapin, dismissed and the caption amended to show Meta S. Chapin only. [The Facts] The proof is in a very unsatisfactory condition, but therefrom we find as follows: The income tax returns were filed with the collector at Los Angeles, California. Meta S. Chapin and Ross E. Chapin were married in 1944. Meta S. Chapin lived in the state of Washington until May 1944 and Ross E. Chapin until about September 1944. Ross E. Chapin died in January 1947, prior to the filing of the petition herein. The deductions claimed in the petition were on the part of both Meta S. Chapin and Ross E. Chapin. Meta S. Chapin could not and did not testify as to the deductions involved in expenditures made by Ross E. Chapin, except as hereinafter specifically stated. The returns were prepared by one Jackson on information furnished *178 in part by Meta S. Chapin and in part by information given by Ross E. Chapin, each furnishing the information as to matters pertaining to him. Meta S. Chapin could not furnish the information as to things that pertained to Ross. Meta S. Chapin during the taxable year 1944 contributed to her church a dollar a week, total of $52. Her contribution to the Red Cross was $10. She also contributed to the Community Chest $15 in 1944. Items about which she did not testify as to 1944 were those which she did not personally make as contributions. She did not know what contributions her husband had made. She did not pay his bills. She made contributions to the Episcopal church, St. Marks Cathedral, Red Cross, and the U.S.O.; also to the Tuberculosis Society in the amount of $10, to the War Chest in the amount of $6. At the time of a move from Seattle she gave excess furniture and her husband's clothing and matters of that kind to "St. Vincent de Paul Society." The furniture and clothing given to St. Vincent de Paul in 1944 was valued by Meta S. Chapin at $100. She did not try to sell it or have any appraisement made. She paid an automobile license of $13.75. Ross E. Chapin was a bartender; also *179 a truck driver and was required to have a chauffeur's license as well as a driver's license. He was outside of the city a good deal of the time and had expenses at hotels and cafes. Meta S. Chapin was a switchboard operator at the Sea Bell Shipbuilding Company and had to have a telephone. The cost thereof was $36 a year. The telephone was used for personal calls. In 1944 she was also working as bookkeeper for H. R. Hunt Putty Manufacturing Company, for which company she still work. In 1945 Ross E. Chapin was employed as a bartender. In the year 1945 Meta S. Chapin made contributions to the Episcopal church, Red Cross, China Relief, Tuberculosis Society, and War Chest, $6 being paid to the War Chest; also gave clothing to St. Vincent de Paul. The Chapins ate at home usually on Saturdays and Sundays but aside from that usually ate their meals away from home. Ross E. Chapin had expense of initiation fee into the Bartenders' Union in the amount of $25. He was in the California Memorial Hospital for seven weeks in 1945, for which $390 was paid in 1945; also on another occasion for an operation. Other bills have since been paid. After he returned from the hospital a male nurse was required *180 twice a week at an expense of $10 a week for a long time. Records were not kept of expense for prescriptions, drugs, and vitamins, except perhaps some slips. Meta S. Chapin's contributions to the Red Cross were taken from her payroll check. She did not try to get receipts. Contributions were made by cash; she had no checking account. She paid interest on an automobile loan to the National Bank of Commerce at Seattle but did not know the amount or have receipts therefor. The loan was about $350. She had cards with payments thereon but did not produce them. Ross E. Chapin had a watch broken and a suitcase, overcoat, and suit of clothes stolen. When they moved from Seattle to California their refrigerator was damaged to the extent of about $75. No recovery was made on the item though claim was made against the company that did the moving, in 1944. In 1945 she paid $2.50 for a driver's license. Meta paid taxes on property in Escondido, California, in the amount of about $60 in 1944 and $67.20 in 1945. The property had been her mother's but was deeded to Meta about 1932 or 1933. The house in Escondido was rented and the rent paid to Meta S. Chapin's mother towards her support as long *181 as she lived. The rental was $30 a month a part of the time and a part of the time $25 a month. Part of the time the property was not rented. Meta never received any of it. Her mother rented the property to the tenants. Her mother is now dead. The property was occupied in May 1944 when Meta moved to California. Meta sold the property in 1947. She did not claim her mother as a dependent. Meta did not pay one-half for her mother's support during 1944 and 1945. She did not claim any depreciation on the house in Escondido. She did not consider the house hers during her mother's lifetime, and never took any of the income from the property while her mother was alive. She had promised her mother that her mother could have the income from the property as long as she lived, so she considered the income to be her mother's. The property was in Meta's name. Her mother, who had no other money, collected the rent and used it towards her support. Meta had had a written document between her and her mother as to the income of the property, and and thought it could be found. [Opinion] From the above sketchy proof of facts, we conclude as follows: No allowance for medical expense can be made, *182 for the reason that no proof whatever was offered as to whether any medical expense was "compensated for by insurance or otherwise" - in whole or in part - within the language of section 23 (x) of the Internal Revenue Code. With reference to contributions, no allowance can be made for any made by Ross E. Chapin, for he had died, and his wife, Meta, testified that she did not know his contributions; that she could not testify as to them. As to her own, she testified to contributions to several organizations or names but gave no amounts as to some. As to others there was no proof that they were organizations to which contributions are deductible under section 23 (q) of the Internal Revenue Code. No receipts or other verification for the expenditures was made, other than the statement of Meta S. Chapin. Sifting the sometimes confused and self-contradicting evidence, with some perhaps unjustified assumption of the nature of the organizations, we find that the petitioner made contributions, as follows, in 1944: To the Episcopal church $52; to Red Cross $10; to Community Chest $15; to Tuberculosis Society $10; to War Chest $6. In 1945, to Episcopal *183 church $52; to War Chest and Tuberculosis Society $6. Clothing and furniture given to "St. Vincent de Paul Society" can not be allowed deduction for the reason that the record shows nothing as to the nature of that organization, and there is no satisfactory proof of the value of the contributions. The articles were not appraised and no effort made to sell them, and Meta Chapin gave no convincing proof of worth of her opinion as to the value. With reference to $22 interest claimed as deduction: No proof of payment of any amount was made, though there was testimony that there was a personal loan on an automobile, in the amount of about $350, in 1944, and statement was made that interest was paid. Cards showing payments on the loan were in existence, but not produced at trial. Nothing can be allowed. Taxes were claimed as deductions. Since there was proof of ownership of an automobile, and a license was required therefor, we allow $13.75 in each year as taxes paid. Receipts were not produced though in existence. We also allow $2.50 driver's license for each year. Allowance of anything for sale tax, shown as 5 per cent, would be rank conjecture with no evidence as to amount, and is, *184 therefore, denied. There is indication that about $60 real estate taxes on property in Escondido, California, were paid in 1944 and $67.20 in 1945, though no receipts were produced and the evidence is not satisfactory. However, the matter must be considered in connection with evidence that the income from the property went directly to Meta S. Chapin's mother, who had originally deeded the property to her daughteer. The mother rented the property to tenants and received the rents. Meta S. Chapin took no depreciation for the property on the tax return. She did not consider it hers during her mother's lifetime. She knew she had had some writing between her and her mother about the income. The respondent amended to increase the deficiencies because of rent income received by the petitioner. The amount of rent was indefinite, for the property was vacant a part of the time, and the amount paid was $25 or $30 a month. In consideration of all of the evidence, we are not satisfied that the rent from the property was chargeable to petitioner. The burden in that respect was on the respondent. The petitioner's actions and evidence indicate that the property may have been encumbered by rights in *185 the mother. We deny the addition proposed to net income, and deny the deduction for taxes paid upon property regarded by the petitioner as that of another. Losses were claimed as deductions. Again the proof is sparse. A refrigerator was shipped, and then had to be repaired, but there is no proof as to whether there was compensation "by insurance or otherwise" within section 23 (e) of the Internal Revenue Code. The same is true of some very indefinite evidence as to a watch and glasses belonging to Ross E. Chapin which were broken, and as to theft of leather jackets, suitcase and clothes stolen, in addition to which there is no proof of values, except the opinion of Meta S. Chapin as to one jacket. The deductions for losses can not be allowed. Under "miscellaneous expenses" claimed as deductions, some proof was made of payment of about $36 each taxable year for a telephone, in that Meta S. Chapin thought the bill was $3 a month. She was a switchboard operator at Sea Bell Shipbuilding Company a part of the time, and had to have a telephone, but in 1944 she was working as bookkeeper for Hunt Putty Manufacturing Company and still does so, therefore it appears *186 that necessity for telephone is limited to some indefinite part of 1944. It was used for personal calls. We allow telephone bill expense to be deducted to the extent of $9 for 1944, on the theory of being required about one-half of that year, and being used for other than business purposes to the extent of one-half. No deduction for 1945 is permissible under the evidence. Union initiation fee and dues for Ross E. Chapin were claimed as deductions. The witness stated the amount for initiation to be $25, and again to be $50, and thought dues were $2 a month, apparently referring to the same union. With her other testimony that she did not pay her husband's bills, it is plain that the evidence is not worth much. We allow deduction in 1945 of $25 as initiation fee, and $20 for union dues, a total of $45. Shoes for the husband were claimed as deduction but the evidence does not disclose the amount, so the item can not be allowed. Evidence of other deductions claimed is lacking. Decision will be entered under Rule 50.